Etnnrm, J.
 

 The act, Rev. Code, ch. 107, sec. 33, expressly gives an appeal to the master on behalf of the slave, from every conviction before a justice of the peace, and the solicitor’s motion was, therefore, properly refused. The principal question depends the 26th section of the same act. It provides that “ no slave shall go armed with a gun, or shall keep such weapon, or shall hunt or range with a gun in the woods, upon any pretense whatsoever;” and it subjects an offending slave to punishment, not exceeding thirty-nine lashes, on conviction, before a justice of the peace. It seems to have been supposed in the Superior Court, that only cases in which slaves willfully, and of their own head, keep a gun or hunt with one, are within the purview of the statute; and that keeping a gun by the order of the master, and for the purpose stated on the trial, did not violate it. But the prohibition is expressed in the strongest and broadest terms, and rendered emphatical by the concluding words,
 
 upon any pretense
 
 whatsoever, and the policy of the provision is so obvious as to require no observations. If the question, then, depend ed on the terms of the act as it now stands, the Court would be of opinion that it must be interpreted according to the natural sense of the words, without admitting an exception where none is expressed. The correctness of that construction is, however, rendered perfectly apparent, by adverting to the earlier legislation on this subject. The earliest was in 1729, Ired. Rev. Code, ch. 5, sec. 7, which made it unlawful for a slave, on any pretense whatsoever, to range or hunt on any person’s land other than his master’s, with dog or gun, unless there be a white man in company. In the act of 1741, which is the foundation of all our laws touching servants and slaves, it is enacted
 
 *59
 
 that no slave should go armed with a gun, or keep a gun, or hunt in the woods with a gun, under any pretense whatsoever, except such as should have a certificate as therein provided, with a proviso allowing the owner of a plan'ation to employ one slave on each plantation in hunting on his master’s land for the purpose of preserving his stock or killing game for the master, if the master first got a certificate from the County Court, that the particular slave was allowed to carry a gun and hunt, which certificate the slave was always to carry with him; Ired. Rev. c. 24, secs. 40, 41, 42. The insertion of the exception proves that the general terms of the enactment were understood to cover every case and possible pretense, including that of a slave being armed by his master; and hence, the necessity of the express exception, which is confined to the single case of a slave with a certificate, hunting for the two purposes specified. Thus the law stood until 1836, when, for reasons, recollected by many, in revising and re-enacting the statutes, that exception was omitted; Rev. Stat. ch. 111, sec. 23, and there is the same omission in the revisal of 1854; Rev. Code, chap. 107, sec. 26. The former insertion and the present omission of the particular exception are conclusive, that the act is to be received according to the import of its strong and general terms, and therefore a master cannot now arm his slave for any purpose ; consequently, the judgment of the justice, for the punishment of the defendants, was according to the law, and it was error to discharge them.
 

 The Court is at a loss to discover the ground on whieli the the master was fined. When the slave is found hunting, any person is authorised to arrest and bring him before a justice of the peace for trial and punishment, and to take him home; and then the act adds, that the master shall pay the taker-up the same reward which is allowed therein for taking up a runaway, viz., five dollars, “ which the person taking up shall be entitled to recover from the master.” That only gives a civil action for the reward to the person entitled, but it creates no offense in the master, much less gives the justice authority to fine him upon the proceedings against the slave, to
 
 *60
 
 which the master is no party, and in this case he is not named in the process, except in the description of the defendants as being his slaves. For that reason, indeed, it would seem, the judgment against him is void
 
 ab initio
 
 and could not be enforced by execution ; and it is not easy to say, how it ought to be dealt with here. But in order to terminate the controversy, it is thought best to reverse that part of the proceedings of the justice; while in tlae rest, there is no error; which will be certified. The master must pay the costs of this Court.
 

 Pes OrntxAM. Judgment affirmed in part.